**In the United States District Court
for the District of Colorado**

Civil Action No. 19-cv-3346-RBJ

Cl.G. on behalf of his minor son, C.G., the aggrieved party,

    Plaintiff,

v.

SCOTT SIEGFRIED, Superintendent of Cherry Creek School District, *et al.*,

    Defendants.

---

## RESPONSE TO MOTION TO DISMISS

Plaintiff Cl.G., on behalf of minor child C.G., by and through his attorneys, Stimson Stancil LaBranche Hubbard, LLC, respectfully submits the following response in opposition to Defendants' collective motion to dismiss.

## LEGAL STANDARD

"There is a strong presumption against the dismissal of claims under [Fed. R. Civ. P. 12(b)(6)]." *Blevins v. Reid*, 2008 U.S. Dist. LEXIS 46168, at *9 (D. Colo. June 12, 2008) (citing *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999)). "In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor." *Frappied v. Affinity Gaming Black Hawk, LLC*, No. 17-cv-01294, 2018 WL 3093326, at *2 (D. Colo. June 22, 2018) (citations omitted). The plaintiff must plead facts that allege a "plausible" entitlement to relief. *Id.* A "district court's dismissal of a civil

rights complaint on a 12(b)(6) motion is scrutinized with special care." *McGill v. Corr. Healthcare Cos.*, No. 13-cv-01080, 2014 WL 2922635, at *8 (D. Colo. June 27, 2014) (quotations and citation omitted).

## FACTUAL BACKGROUND

Plaintiff C.G. was a student at Cherry Creek High School (CCHS). On a Friday night, Plaintiff snapped a photo of friends smiling and wearing funny hats, including one fashioned after WWII military garb, while at a thrift store. C.G. posted the photo to his private Snapchat stories, with a caption inspired by a popular meme that said "Me and the boys bout to exterminate the jews." (A.C. ¶¶ 34-36.) Plaintiff intended the post to be humorous and when he realized someone took offense, he posted an apology to the same Snapchat account. (*Id.* ¶ 45.)

Plaintiff's post did not reference CCHS or any staff or student. Neither school nor anyone associated therewith was tagged in the post. (*Id.* ¶ 41.) Nothing about the teenagers in the picture or their clothing suggested a link to CCHS. (*Id.* ¶ 42.) The post was private and viewable only by people who were "friends" with Plaintiff on Snapchat. (*Id.* ¶ 43.)

The family of one CCHS student who saw the post, reported it to Principal Ryan Silva and Superintendent Scott Siegfried. (*Id.* ¶ 55.) The family asked school officials to use the post as a learning tool, to educate students about hate speech and hate crimes. (*Id.* ¶56; ECF No. 32-1.) Those officials, working with other Defendants, hatched a "plan" to punish Plaintiff for his off-campus speech. (A.C. ¶¶ 46-51; ECF No. 32-1.)

Plaintiff was initially suspended for five days for violating a District policy that, on its face, applied only to student conduct on-campus or at a school-sponsored activity. (A.C. ¶ 52.) Defendants gave Plaintiff no opportunity to appeal but repeatedly extended Plaintiff's suspension under this misapplication of District policy. (*Id.* ¶¶ 53, 65-66.) Plaintiff and his family repeatedly attempted to engage with Defendants, but their efforts were rebuffed. (*Id.* ¶¶ 67-69.) Plaintiff's suspension kept him off-campus and out of school for over 5 weeks. (*Id.* ¶¶ 54, 77.)

The District then sought to expel Plaintiff, claiming his post had some unknown "nexus"[1] to the school environment. (A.C. ¶¶ 46, 70.) Defendants also claimed Plaintiff's actions disrupted CCHS because officials had to correspond by email with a handful of parents. Principal Silva sent one school-wide email related to the post, and CCHS chose to use a 30-minute advisory period to discuss the impact of hate and how hate speech affects people. (*Id.* ¶¶ 56-63.) The appointed hearing officer refused to consider whether Plaintiff's speech was protected by the First Amendment or whether District policies infringed on First Amendment rights. (*Id.* ¶ 73.) Superintendent Siegfried expelled Plaintiff for his Snapchat post and this expulsion was affirmed by the School Board. (*Id.* ¶¶ 77-78.)

Defendants' actions violated Plaintiff's rights to free speech and due process.

## ARGUMENT

---

[1] The term "nexus" appears no where in the relevant district policies or in any legal precedent related to a school's authority to discipline students for off-campus speech. Yet Defendants applied this "nexus" standard throughout the disciplinary process. (A.C. ¶¶ 46, 70.)

The First Amendment prohibits Congress and, through the Fourteenth Amendment, the States, from abridging an individual's freedom of speech. U.S. Const., amend. I; *Gitlow v. New York*, 268 U.S. 652, 666 (1925). Speech is protected by the First Amendment unless it falls into one of a few "limited areas" the State is permitted to regulate. *United States v. Stevens*, 559 U.S. 460, 468 (2010). Because Plaintiff's Snapchat post did not fall within one of these exceptions, Plaintiff's speech was protected and Defendants' disciplinary action based thereon violated Plaintiff's clearly established First Amendment right to free speech.

**A.   Defendants Violated Plaintiff's Free Speech Rights by Expelling Him for Engaging in Protected Speech**

The Supreme Court has granted schools the ability to regulate student speech under limited circumstances, none of which apply here. Schools can closely police the language used in a school newspaper or school-sponsored publication. *Hazelwood Sch. Dist. V. Kuhlmeier*, 484 U.S. 260 (1988); *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1229-30 (10th Cir. 2009). Schools may regulate speech that is delivered in a lewd or vulgar manner when it occurs on-campus as part of a high school program. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986). Speech that promotes drug use at an off-campus but school-sponsored event may be regulated. *Morse v. Frederick*, 551 U.S. 393 (2007). However, even on-campus, students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker Des Moines Ind. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1969). Schools may regulate student speech "inside the school walls" only when it threatens a concrete and substantial disruption to

the school environment. *Id.* at 514; *see also Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 37–38 (10th Cir. 2013).

1. <u>Defendants Cite No Supreme Court or Tenth Circuit Authority that Allows them to Regulate Off-Campus Speech</u>

The last two Supreme Court cases addressing student speech have drawn a clear line between on-campus and school-sponsored speech, which can be regulated by school authorities, and off-campus/non-school-sponsored speech, which is protected by the First Amendment. In addressing vulgar language during an on-campus student presentation, Justice Brennan noted: "If respondent had given the same speech outside of the school environment, he could not have been penalized simply because government officials considered his language to be inappropriate." *Fraser*, 478 U.S. at 688 (Brennan, J., concurring). When affirming a student's suspension for unveiling a "Bong hits 4 Jesus" banner at a school-sponsored rally, the Supreme Court held that, the "same speech in a public forum outside the school context … would have been protected." *Frederick*, 551 U.S. at 405. Following the Supreme Court's lead, the Tenth Circuit similarly has recognized that speech which can be regulated when it occurs on-campus would be protected if it occurred off-campus. *West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1365 (10th Cir. 2000).

In this case, Plaintiff posted a picture to his private Snapchat page on a Friday night when he was at a thrift store. He was neither on-campus nor participating in a school-sponsored activity. Nothing about the photo or Plaintiff's post was linked to his

school. Under Supreme Court precedent and the law of this circuit, Plaintiff's purely off-campus speech is protected by the First Amendment.

2. <u>Out-of-Circuit Precedent Does Not Support Applying *Tinker*'s Substantial Disruption Test to these Facts</u>

Defendants cite law from outside the Tenth Circuit and urge the Court to extend *Tinker's* "concrete and substantial disruption" test to Plaintiff's purely off-campus speech. (Motion pp. 5-6.) Even assuming the Tenth Circuit would follow this precedent, Plaintiff's speech is protected under the out-of-circuit case law.

Other circuits have applied *Tinker* to off-campus speech where that speech is intentionally directed towards the school environment. *See J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 930 (3d Cir. 2011) ("Regardless of its place or origin, speech intentionally directed towards a school is properly considered on-campus speech."); *Bell v. Itawamba*, 799 F.3d 379, 395 (5th Cir. 2015) (*Tinker* governs analysis "when a student intentionally directs at the school community speech reasonably understood by school officials to threaten, harass, and intimidate a teacher").

"On the other hand, speech originating off campus does not mutate into on-campus speech simply because it foreseeably makes its way onto campus." *Snyder*, 650 F.3d at 930 (citing *Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205 (3d Cir. 2011) (First Amendment protected student's fake Facebook page that was demeaning and derogatory towards the school principal but not threatening or directed at school environment)). Thus, unless the speaker targeted his speech at a school or intended the speech to substantially disrupt the school environment, school officials may not "venture out of the school yard

and into the general community where the freedom accorded expression is at its zenith." *Thomas v. Bd. of Ed.*, 607 F.2d 1043, 1050 (2d Cir. 1979).

Many of the out-of-circuit cases that allow schools to regulate off-campus speech involve direct threats to the safety of the school overall or the safety of a particular student or teacher. *D.J.M. ex rel. D.M. v. Hannibal Pub. Sch. Dist. No. 60*, 647 F.3d 754, 766 (8th Cir. 2011) (student's "hit list" threatening to kill certain students in the school was subject to the *Tinker* analysis); *Wisniewski v. Bd. of Educ. of Weedsport Cent. Sch. Dist.*, 494 F.3d 34, 37-38 (2d Cir. 2007) (text message depicting gun shooting teacher in the head subject to *Tinker*); *Boim v. Fulton County Sch. Dist.*, 494 F.3d 978 (11th Cir. 2007) (student essay about shooting her math teacher not protected by First Amendment under *Tinker*). In fact, even when a student's off-campus speech is intentionally directed at her school, the student cannot be disciplined for offensive but non-threatening speech. *B.L. by Levy v. Mahanoy Area Sch. Dist.*, 289 F. Supp. 3d 607, 613 (M.D. Pa. 2017) (school lacked authority to discipline student for posting photo on social media showing her and a friend flipping off the camera with the text "fuck school fuck softball fuck cheer fuck everything" superimposed on the image).

Plaintiff's Snapchat post was not intentionally directed towards anyone, much less his school or anyone associated therewith. The post did not reference CCHS, any CCHS teacher or administrator, or any student at CCHS. No one connected to CCHS was tagged in the post.

Plaintiff did not intend for his post to reach the school. His post was not publicly available; it could be seen by only to a select group of Plaintiff's Snapchat connections. The post went up on Friday night and, because it was a Snapchat story, would have been deleted as a matter of course 24 hours later. By the time school recommenced on Monday, the post would have been gone.

Plaintiff did not intend for the post to disrupt the school environment. The post was not a threat.[2] The photo shows his friends smiling and wearing goofy hats and wigs. There are no weapons or any other indication of a plan to "exterminate" anything. Plaintiff's comment was not directed at a particular person or a particular location.

Even the school did not take the post as a threat. On Monday morning, Plaintiff was allowed to park his car in the school lot, walk past an exterior security booth between the parking lot and the building carrying his school backpack, and walk down the hallways past the school security office to his first period class. (A.C. ¶ 49.) In these times, where school shootings are all too frequent, CCHS would not have allowed Plaintiff to go about his normal morning if they believed he was a threat in any way.

Plaintiff intended his post to be humorous. He was inspired by his friends' thrift store headwear and captioned the photo with a comment patterned after a popular meme. Plaintiff believed his friends would think his comment was so outrageous that no one

---

[2] Notably, Defendants do not argue Plaintiff's speech was unprotected because it was a "true threat." *See Watts v. United States*, 394 U.S. 705 (1969) (outlining "true threat" exception to First Amendment free speech protections).

could possibly take it seriously. Shortly after finding out that his joke fell flat, Plaintiff posted an apology to the same Snapchat account.

Because Plaintiff did not intentionally direct his off-campus speech towards the school or anyone associated therewith, and did not intend his post to impact the school environment, Plaintiff's speech was protected under the out-of-circuit precedent Defendants ask the Court to apply.

### 3. Even if the Court Applies *Tinker's* substantial disruption test, Plaintiff States a First Amendment Claim

Even if the Court opts to apply the *Tinker* analysis here, Defendants' Motion to Dismiss should be denied. *Tinker* requires a "specific and significant" disruption to the school environment and "not just some remote apprehension of disturbance." *Saxe*, 240 F.3d 200, 211 (3d Cir. 2001). The "substantial disruption" standard is an extremely high bar: "[c]ourts have applied such an exception sparingly, applying it only to the most violent and threatening forms of speech and consistently declining to expand it to extremely offensive but nonviolent out-of-school speech." *R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist.*, 894 F. Supp. 2d 1128, 1140 (D. Minn. 2012).

To constitute a "substantial disruption," courts require that "widespread disorder" such as cancelled classes, an upsurge in truancy or altered test scores. *See A.N. by and through Niziolek v. Upper Perkiomen Sch. Dist.*, 227 F. Supp. 3d 391, 399 (E.D. Pa. 2017); *Zamecnik v. Indian Prairie Sch.*, 636 F.3d 874, 876 (7th Cir. 2011). The school environment is not "substantially disrupted" when a student's speech causes administrators to answer to a handful of parent and student complaints and there is a

general buzz around campus. *J.S. ex rel. Snyder v. Blue Mountain School District,* 650 F.3d 915, 929 (3d Cir. 2011) (*en banc*) ("[B]eyond general rumblings, a few minutes of talking in class, and some officials rearranging their schedules to assist [the principal] in dealing with the profile, no disruptions occurred."); *see also T.V. ex rel. B.V. v. Smith-Green Cmty. Sch. Corp.*, 807 F. Supp. 2d 767, 783 (N.D. Ind. 2011) (no substantial disruption when administrators had to respond to a handful of parent complaints and arguments between students); *J.C. ex rel. R.C. v. Beverly Hills Unified Sch. Dist.*, 711 F. Supp. 2d 1094, 1120 (C.D. Cal. 2010) ("mild distraction" insufficient).

Here, at the time Plaintiff was suspended, the school had been contacted by the family of <u>one</u> CCHS student. No classes were cancelled and no students missed school. There had been no media coverage of the post. (Am. Compl. ¶¶ 55-57.) Plaintiff's suspension was not justified by any substantial disruption to the learning environment.

Even at the time of Plaintiff's expulsion, the only "disruption" to the school environment were a handful of emails sent between school administrators and parents,[3] one school-wide email sent by the principal, and a non-academic administrative period during one school day spent discussing hate speech in general. (A.C. ¶¶ 56-63.) Plaintiff's post did not cause the level of disruption required to allow Defendants to regulate this off-campus speech.

---

[3] The bulk of these emails came after Principal Silva sent a school-wide email notifying all parents about Plaintiff's deleted social media post. Thus, much of the so-called "disruption" was caused by Defendants, not Plaintiff. (A.C. ¶¶ 58-60.)

Plaintiff has alleged facts showing that his First Amendment right was violated when he was suspended and expelled for his protected speech.

### B. Binding Precedent Clearly Established that School Administrators Could Not Discipline Plaintiff for Off-Campus Speech

Defendants suggest their actions did not violate clearly established law because there is no Supreme Court or Tenth Circuit precedent that would have put them on notice that disciplining Plaintiff for his speech was unconstitutional. (Motion at 8.) First, as Chief Judge Brimmer ruled when addressing the same argument in *Asten v. City of Boulder*, Defendants' contention "both overstates the requirements of the clearly established prong and constrains the inquiry too narrowly. There need not be identical fact patterns in the case law for a defendant to be on notice of clearly established law." 652 F.Supp.2d 1188, 1205 (D. Colo. 2009).

As noted above, Supreme Court and Tenth Circuit authority holds that, while schools may regulate speech that occurs within the school environment or in connection with a school-sponsored activity, the same speech is protected when it occurs off-campus. *Fraser*, 478 U.S. at 688; *Frederick*, 551 U.S. at 405; *West*, 206 F.3d at 1365. This established precedent put Defendants on notice that their conduct was unconstitutional.

Defendants rely on *Yeasim v. Durham*, an unpublished Tenth Circuit case in which the court affirmed the grant of qualified immunity to a school administrator who expelled a college student who was criminally charged with harassing a female student and directed tweets and other communications at the female student in violation of a court-

11

issued protection order. 719 F. App'x 844 (10th Cir. 2018). *Yeasim* is both legally and factually distinguishable. Yeasim's discipline was based in part on his criminal conduct. Moreover, he purposefully directed harassing speech at another student on campus, which caused her performance to slip and made her fear going to school. *Id.* at 848. Here, Plaintiff's speech was not directed at any person in particular, much less someone at CCHS. No student reported feeling unsafe or had their educational experience interfered with by Plaintiff's speech.

While the Tenth Circuit observed in *Yeasim* that the law is "unsettled" as to whether a school can discipline a student for off-campus speech that purposely targets another student and makes that student feel unsafe on campus, the law is not similarly unclear when a student's speech is completely unrelated to the school environment. Under the First Amendment, speech is protected unless it falls within one of a few "limited areas" that the State is permitted to regulate. *United States v. Stevens*, 559 U.S. 460, 468 (2010). By Defendants' own admission, there is no Supreme Court or Tenth Circuit authority that a student's off-campus speech falls within one of these limited exceptions. (Motion p. 5.) The Supreme Court has never "allowed schools to punish students for off-campus speech that is not school-sponsored or and that caused no substantial disruption at school." *J.S. ex rel. Snyder*, 650 F.3d at 933. Defendants were on notice that they had no authority to regulate Plaintiff's speech and their disciplinary action against him violated clearly established First Amendment law.

**C.    Plaintiff's Claims against Defendants' Policies Are Sufficient to Withstand a Motion to Dismiss**

Defendants move to dismiss Plaintiff's claims challenging the District's policies as overbroad. As this is a First Amendment case, the overbreadth analysis is not strenuous. *Griffin v. Bryant*, 30 F. Supp. 3d 1139 (D.N.M. 2014). If the policies impinge on a substantial amount of protected speech, they are overbroad. *Id.*

At the time Plaintiff was suspended, school officials had been contacted by one family about Plaintiff's Snapchat post. (Am. Compl. ¶¶ 55-57; Ex. A to Motion to Dismiss.) If Defendants' policies allow for suspension based on a single complaint that another student used offensive language, then their policies undoubtedly infringe on a substantial amount of protected speech. One can only imagine the variety of things teenagers say in their free-time on social media away from campus that could cause another student to take offense. As such, Plaintiff has sufficiently alleged that Defendants' policies are unconstitutionally overbroad.

### D.   Plaintiff's Due Process Rights were Violated When He was not Afforded a Meaningful Opportunity to be Heard

"To determine whether a plaintiff was denied procedural due process, we engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Schulz v. City of Longmont, Colorado*, 465 F.3d 433, 443 (10th Cir. 2006). A public school education is a protected interest. *Goss v. Lopez*, 419 U.S. 565, 574 (1975). Any suspension longer than ten days requires a heightened level of process. *Id.* at 584.

The level of process afforded, Plaintiff fell below the constitutionally required mandate. Plaintiff was not afforded an opportunity to appeal or otherwise be heard on the fact that the policy used to justify his suspension was obviously and facially inapplicable, given that his conduct occurred off-campus. (Am. Compl. ¶¶ 52-53.) Plaintiff's suspension was then extended multiple times without any further opportunity to be heard. Each extension of Plaintiff's suspension further invoked the need for a more formalized process under *Goss*. Defendants' failure to afford Plaintiff a meaningful opportunity to be heard on the suspension harmed Plaintiff, as he was denied the opportunity to return to school after the Snapchat post, which caused severe social isolation and lasting social-emotional damage.

The expulsion process was also constitutionally insufficient. The fundamental tenant of due process is the "opportunity to be heard" on issues important to determining whether the proposed discipline is justified. *Goss*, 419 U.S. at 579. Defendants' expulsion process relies heavily on a hearing officer, to whom the Superintendent delegates his authority to conduct expulsion hearings. (A.C. ¶ 31.) Despite the fact that Plaintiff was being expelled for his off-campus speech, the hearing officer admitted she was not empowered to determine issues of law, including whether Plaintiff's conduct was protected by the First Amendment. (*Id.* ¶ 73.) Neither the Superintendent nor the School Board, both of whom affirmed the hearing officer's decision, acknowledged Plaintiff's First Amendment rights in any way. Nowhere in the District's process was Plaintiff allowed to meaningfully assert his First Amendment right to freedom of speech.

Under *Goss*, it was clearly established that Defendants could not suspend Plaintiff for over a month or expel him without providing a meaningful opportunity to be heard on the determinative issues.[4]

### E.   Plaintiff's Specific Allegations of Concerted Activity State a Conspiracy Claim

Plaintiff does not rely on conclusory assertions of a conspiracy; his Amended Complaint lists eleven discrete acts that Defendants engaged in to further their conspiracy to violate his First Amendment rights. These allegations must be taken as true and are sufficient to state a conspiracy claim. *See Starr v. Lakewood*, 2009 WL 1120038, at *5 (D. Colo. April 27, 2009). Moreover, even the minimal record before the Court supports the conspiracy allegations. The email chain in Exhibit A attached to the Motion to Dismiss shows that Silva and Siegfried devised a "plan" that resulted in Plaintiff's initial suspension, and which led to his expulsion. As alleged in the Amended Complaint, others were involved in this "plan." Unable to justify the suspension on school policy, Defendants brewed up a "nexus" standard which does not exist in any District policy, misrepresented the post's impact on the school by obfuscating numbers of parent contacts, and offered

---

[4] Superintendent Siegfried is not entitled to absolute immunity because he was not operating in a quasi-judicial function. He is the ultimate decision-maker on Plaintiff's expulsion and appears to have been involved earlier in the decision-making process. Siegfried is cc'ed on the first email sent by a complaining parent and, in his response, Silva stated that he had talked with Siegfried over the weekend before Plaintiff was suspended and they together came up with a "plan" to handle Plaintiff's discipline. Any determination on quasi-judicial immunity is premature.

perjured testimony before the hearing officer. These acts were coordinated and resulted in the violation of Plaintiff's First Amendment rights.[5]

## CONCLUSION

For the reasons set forth above, Plaintiff asks the Court to deny Defendant's Motion to Dismiss in its entirety.

Dated: April 10, 2020.

Respectfully submitted,

*s/ Jamie Hughes Hubbard*
Jamie Hughes Hubbard
STIMSON STANCIL LABRANCHE HUBBARD, LLC
1652 Downing Street, Denver, CO 80218
Phone/Fax:  720.689.8909
Email:  hubbard@sslhlaw.com
*Attorney for Plaintiff*

---

[5] Plaintiff concedes that naming both the Board and the District are redundant and does not object to dismissal of the Board of Education as a Defendant.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April, 2020, a true and correct copy of the foregoing **RESPONSE TO MOTION TO DISMISS** was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Daniel Spivey
dspivey@semplelaw.com
Jonathan Patrick Fero
jfero@semplelaw.com

                                                      *s/ Holli Baker*
                                                      Holli Baker