IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03346-RBJ

Cl.G. on behalf of his minor son, C.G., the aggrieved party,

    Plaintiff,

v.

SCOTT SIEGFRIED, et al.

    Defendants.

## REPLY IN SUPPORT OF MOTION TO DISMISS

In his Response to the Motion to Dismiss (Dkt. #36), C.G. states he was merely joking when he made a social media post to classmates that he was going to "exterminate the Jews" and could not lawfully be disciplined. Social media does not respect schoolhouse doors, and what matters is Cherry Creek School District No. 5's reasonable forecast of substantial disruption.

### ARGUMENT

### I. The Weight of Authority Allows Schools to Regulate Off-Campus Speech.

C.G. mainly argues the District can never regulate off-campus speech. Although C.G. correctly notes the United States Supreme Court and Tenth Circuit have not expressly applied the standard articulated in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), to off-campus speech, he completely ignores that the vast majority of federal appellate courts to consider the issue have done so, largely because social media is pervasive. Indeed, no

federal appellate court has held *Tinker* can never apply to off-campus speech.[1] This Court should follow the weight of authority and recognize the modern reality educators face every day that off-campus electronic speech finds its way into schools and can disrupt the learning environment.

## II.     The District Lawfully Disciplined C.G. under the *Tinker* Standard.

As detailed in the Motion to Dismiss, C.G. was lawfully disciplined because his post foreseeably reached the school community and caused a substantial disruption. C.G. presents no cogent counterargument.

He first tries to modify the *Tinker* standard by arguing there was no "widespread disorder." (Pl.'s Resp. at 10.) That language, however, appears to be of C.G.'s own making, and the actual standard is much lower. As the Tenth Circuit explained in *Derby*, even the lack of "an actual disruption . . . does not mean that the school ha[s] no authority to act." 206 F.3d at 1366. A "reasonable basis for **forecasting** disruption" is enough. *Id.* (emphasis added).

Second, C.G. argues his speech was not "intentionally directed towards the school environment." Under *Tinker*, however, the "test is an **objective** one, focusing on the reasonableness of the school administration's response, not on the intent of the student." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 113 (2d Cir. 2012) (emphasis added). For example, in *Wisniewski v. Board of Education of Weedsport Central School District*, a student had an icon on his instant messenger with a gun firing a bullet at a person's head and the words, "Kill Mr. VanderMolen," who was a teacher. 494 F.3d 34, 36 (2d Cir. 2007). Upholding the student's suspension, the court deemed it irrelevant "whether or not [the student] intended his IM icon to be

---

[1] C.G.'s citation to *West v. Derby Unified School District No. 260*, 206 F.3d 1358 (10th Cir. 2000) is misleading. In *West*, the Tenth Circuit did not address regulation of off-campus speech; at issue was a picture of the Confederate flag drawn during class. *Id.* at 1365–66.

communicated to school authorities or, if communicated, to cause a substantial disruption." *Id*. at 40; *see also A.N. v. Upper Perkiomen Sch. Dist.*, 228 F. Supp. 3d 391, 401 (E.D. Pa. 2017) (emphasizing student's "intent behind his [social media] post is not relevant in applying *Tinker*").

C.G. nonetheless relies on *Bell v. Itawamba County School District*, 799 F.3d 379 (5th Cir. 2015), to overstress his allegedly benign subjective intent. Yet, in *Bell*, the Fifth Circuit embraced the reality of the digital age and squarely rejected the outdated view of a school's boundaries that C.G. seemingly holds dear. While the court recognized the student's intent in posting a rap recording on Facebook, it disclaimed the adoption of a "rigid standard" and merely emphasized it was enough that the student knew his social media post and the recordings "would be viewed and heard by students." *Id.* at 385–86. Like the other Circuits that have applied *Tinker* to off-campus speech, the Fifth Circuit was simply looking for a sufficient connection between the speech and the school. It did not hold such a connection depends on the speaker's subjective intent.[2]

Regardless, C.G. cannot plausibly disclaim that his post was at least partially directed to the school community. By his own allegations, it involved three classmates who were connected with him on Snapchat, he made no effort to limit the distribution of his post when he made it, and the post quickly reached other students and their parents. (Am. Compl. at ¶¶ 6, 34, 38, 43, 46.) *Cf. Kowalski v. Berkeley Cty. Schs.*, 652 F.3d 565, 573 (4th Cir. 2011) (holding social media activity had nexus to school in part because "the dialogue would and did take place among [students] whom she invited to join the [MySpace] group and the fallout from her conduct and the speech within

---

[2] C.G. also wrongly suggests the District's consideration of a "nexus" between his post and the school environment was improper. Several Circuits so characterize the requisite connection, *e.g.*, *McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 707 (9th Cir. 2019) (citing cases from Fourth and Eighth Circuits), and applying the standard here ensured the District did not regulate protected speech.

the group would be felt in the school itself").

C.G.'s third move is to attack the District's forecast of disruption, citing *Snyder v. Blue Mountain School District*, 650 F.3d 915 (3d Cir. 2011). The facts there are different. In contrast to C.G.'s Instagram post about exterminating Jews that led other students to feel unsafe, the post in *Snyder* was merely vulgar with no suggestion of violence. *Id.* at 929. It also was "so juvenile and nonsensical that no reasonable person could take its content seriously." *Id.* When, as here, there is concern about "protecting the well-being and educational rights" of students, a "school has greater latitude in taking disciplinary steps." *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 848 (D. Minn. 2015); *cf. Spero v. Vestal Cent. Sch. Dist. No. 317*, 2019 WL 6840175, at **2, 6 (N.D.N.Y. Dec. 16, 2019) (finding school's forecast was reasonable where student posted video showing woman handling firearm). C.G. further hints the disruption was caused by the District. Yet, "cases do not distinguish between 'substantial disruption' caused by the speaker and 'substantial disruption' caused by the reactions of onlookers or a combination of circumstances." *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 778 (9th Cir. 2014).

### III.    There Were No Due Process Violations.

Despite an appeal and two hearings where he was represented by counsel, C.G. argues he was not afforded due process because the District's Board did not consider his First Amendment argument. This is not pled in the Complaint, and C.G. cites no law requiring express consideration of whether his speech was protected. C.G. also is incorrect about having no opportunity to appeal his pre-expulsion suspension. Board Policy JII-R allowed him to file a complaint of "a violation or inequitable application" of any Board policy. (Ex. 3 to Mot. to Dismiss at 10–11.)

As for C.G.'s overbreadth facial challenge to District policies, he does not dispute that

Board Policy JICDA states District discipline "shall not infringe upon constitutionally protected rights," and District Policy JICED expressly recognizes "student expression rights." C.G. asserts a First Amendment overbreadth challenge is not strenuous, but the Tenth Circuit characterizes it as "strong medicine" to be employed "only as a last resort." *West*, 206 F.3d at 1367.

### IV. The Individual Defendants are Entitled to Qualified and Absolute Immunity.

There is no reasonable dispute that the law is not clearly established regarding the scope of a school's authority to discipline students for off-campus speech. Defendants do not rely on a fact pattern, as in *Asten v. City of Boulder*, 652 F. Supp. 2d 1188, 1205 (D. Colo. 2009). C.G.'s challenge to Superintendent Siegfried's absolute immunity makes no sense and cites no law.

RESPECTFULLY SUBMITTED this 24th day of April, 2020.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

By: *s/ Jonathan P. Fero*
M. Brent Case
Jonathan P. Fero
Daniel P. Spivey
1120 Lincoln Street, Suite 1308
Denver, CO  80203
(303) 595-0941
bcase@semplelaw.com, jfero@semplelaw.com, dspivey@semplelaw.com
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April, 2020, a correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** was filed and served via CM/ECF to:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard, LLC
1652 N. Downing Street
Denver, CO 80218
hubbard@sslhlaw.com
*Attorney for Plaintiff*                    By:  *s/ Kathleen Schmidt*